**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CRISTIAN A. SERRANO-RAMIREZ, | : | Civil No. 1:20-CV-00913 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| CLAIR DOLL, | : | |
| Warden of York County Prison, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is an immigration habeas corpus case.  Petitioner Cristian A. Serrano-Ramirez ("Serrano-Ramirez") argues that his continued detention without a bond hearing has become unconstitutional and that the conditions of his confinement in light of the global COVID-19 pandemic are unconstitutional.  The case is presently before the court on Serrano-Ramirez's petition for writ of habeas corpus and a motion for a temporary restraining order in which Serrano-Ramirez seeks release from custody pending the court's resolution of the petition.  For the reasons that follow, the petition for writ of habeas corpus is denied and the motion for a temporary restraining order is denied as moot.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Serrano-Ramirez is a native of Venezuela and a dual citizen of Venezuela and Colombia.  (Doc. 1 ¶ 2.)  Serrano-Ramirez entered the United States by presenting himself to immigration and customs officials in Del Rio, Texas on

1

April 4, 2019.  (*Id.* ¶ 4.)  He has been detained by United States Immigration and Customs Enforcement ("ICE") since that date and is currently detained at York County Prison ("YCP") in York, Pennsylvania.  (*Id.* ¶¶ 3–4.)

On July 10, 2019, an immigration judge ("IJ") granted Serrano-Ramirez's request for deferral of removal to Venezuela and ordered him to instead be removed to Colombia.  (*Id.* ¶ 5.)  The Board of Immigration Appeals ("BIA") subsequently remanded the case back to an IJ for consideration of Serrano-Ramirez's request for deferral of removal to Colombia.  (*Id.* ¶ 6.)  An IJ denied the request on May 28, 2020, and again ordered Serrano-Ramirez to be removed to Colombia.  (*Id.*)  Serrano-Ramirez is appealing that decision to the BIA.  (*Id.*)

Serrano-Ramirez has been detained by ICE for approximately fourteen months.  During his detention, Serrano-Ramirez has requested bond, but his request has been denied due to an IJ's conclusion that he is an arriving alien and that ICE therefore lacks the discretion to release him on bond.  (*Id.* ¶ 7.)  Serrano-Ramirez additionally requested parole on April 9, 2020, but his request was denied on April 17, 2020 based on an IJ's conclusion that "there does not appear to be an urgent humanitarian reason[] or significant public benefit" justifying the request. (*Id.* ¶¶ 8–9.)

Serrano-Ramirez filed a habeas corpus petition challenging his continued detention in this court on January 14, 2020.  *See Serrano-Ramirez v. Doll*, No.

1:20-CV-00070 (M.D. Pa. filed Jan. 14, 2020) [hereinafter *Serrano-Ramirez I*].

This court denied the petition in that case on May 26, 2020.  *See Serrano-Ramirez v. Doll*, No. 1:20-CV-00070, 2020 WL 2735358 (M.D. Pa. May 26, 2020).  The court found that Serrano-Ramirez's detention was governed by 8 U.S.C. § 1225(b) and concluded that there was no statutory right to a bond hearing under that statute. *Id.* at *1–2.  The court acknowledged that Serrano-Ramirez's continued detention would be unconstitutional if it became unreasonably prolonged, but found that was not the case because Serrano-Ramirez had only been detained for approximately thirteen months at the time of the court's decision.  *Id.* at *3.  The court accordingly denied the petition without prejudice to Serrano-Ramirez's right to file an additional petition if his detention became arbitrary or unreasonable.  *Id.* at *8.

Nine days after his petition was denied in *Serrano-Ramirez I*, Serrano-Ramirez filed the emergency petition for writ of habeas corpus that initiated the present case.  (Doc. 1.)  Serrano-Ramirez argues that his continued detention without a bond hearing violates his right to procedural due process under the Fifth Amendment and that the conditions of his confinement in light of the global COVID-19 pandemic violate his right to substantive due process under the Fifth Amendment.  (*Id.*)  On the same day that he filed his petition, Serrano-Ramirez filed a motion for a temporary restraining order and a supporting brief, seeking release from custody pending the disposition of his petition.  (Doc. 2.)  In response

to the motion, Chief United States District Judge John E. Jones set an expedited

briefing schedule, requiring Respondents to file a response on or before June 12,

2020, and allowing Serrano-Ramirez to file a reply brief in support of the motion

on or before June 16, 2020.  (Doc. 7.)

Respondents timely filed a brief opposing the motion for a temporary

restraining order and the merits of Serrano-Ramirez's habeas corpus petition on

June 12, 2020.  (Doc. 10.)  The case was reassigned from Chief Judge Jones to the

undersigned later that day.  (Doc. 12.)  Serrano-Ramirez filed a reply brief in

support of the motion for temporary restraining order on June 16, 2020.[1]

## FACTUAL BACKGROUND REGARDING SERRANO-RAMIREZ'S CONDITIONS OF confinement CLAIM

In his petition, Serrano-Ramirez asserts that the conditions of his

confinement in light of the COVID-19 pandemic violate the Fifth Amendment.

(*See* Doc. 1 ¶¶ 163–70.)  At this point, the spread of COVID-19 is, unfortunately, a

well-known fact and the subject of extensive research and discussion in the

scientific, medical, legal, and policy forums.  *See, e.g.*, *Ndir v. Doll*, __ F. Supp. 3d

__, No. 1:20-CV-00705, 2020 WL 2306761 (M.D. Pa. May 8, 2020); *Williams v.*

---

[1] In his reply brief, Serrano-Ramirez requests that the court strike Respondents' opposition brief because the size of the footnotes in the opposition brief do not comply with the Local Rules and because the brief does not contain a table of contents or a table of citations.  Given the expedited nature of this case and the short amount of time counsel had to prepare the opposition brief, the court excuses the Respondents' departure from the Local Rules and denies the request to strike.

*Barr*, No. 4:20-CV-00705, 2020 WL 2193448 (M.D. Pa. May 6, 2020); *Bystron v.*

*Hoover*, __ F. Supp. 3d __, 3:20-CV-000602, 2020 WL 1984123 (M.D. Pa. Apr.

27, 2020); *Engelund v. Doll*, No. 4:20-CV-00604, 2020 WL 1974389 (M.D. Pa.

Apr. 24, 2020); *Buleishvili v. Hoover*, No. 1:20-CV-00607, 2020 WL 1911507

(M.D. Pa. Apr. 20, 2020); *Saillant v. Hoover*, __ F. Supp. 3d __, No. 1:20-CV-

00609, 2020 WL 1891854 (M.D. Pa. Apr. 16, 2020); *Umarbaev v. Lowe*, __ F.

Supp. 3d, No. 1:20-CV-00413, 2020 WL 1814157 (M.D. Pa. Apr. 9, 2020); *Verma*

*v. Doll*, No. 4:20-CV-00014, 2020 WL 1814149 (M.D. Pa. Apr. 9, 2020);

*Camacho Lopez v. Lowe*, __ F. Supp. 3d __, No. 3:20-CV-00653, 2020 WL

1689874 (M.D. Pa. Apr. 7, 2020); *Thakker v. Doll*, __ F. Supp. 3d__, No. 1:20-

CV-00480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020) [hereinafter *Thakker I*].

Prisons present "unique concerns" regarding the spread of COVID-19

because "by their very nature, prisons are confined spaces unsuited for social

distancing." *Verma*, 2020 WL 1814149, at *4. Given those unique concerns, the

Centers for Disease Control and Prevention has published guidelines for prisons to

follow in combatting the disease. *Interim Guidance on Management of*

*Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*,

CDC, https://www.cdc.gov /coronavirus/2019-ncov/downloads/guidance-

correctional-detention.pdf (last visited June 17, 2020) [hereinafter CDC Prison

Guidelines]. Those guidelines suggest, among other things, that prisons ensure an

adequate supply of hygiene supplies, medical supplies, cleaning supplies, and personal protective equipment ("PPE"); limit the number of entrances into and out of the prisons; implement stringent cleaning and disinfecting policies; reinforce healthy hygiene practices for staff members and inmates; screen individuals entering the facilities; implement social distancing policies; isolate individuals with confirmed or suspected cases of COVID-19; and quarantine individuals who were in close contact with individuals who have confirmed or suspected cases of COVID-19. *Id.* at 7–19.

YCP has implemented a number of preventive measures to stop the spread of the disease, which generally conform to the CDC's guidelines. YCP, which normally houses close to 2,245 people, has reduced the number of people housed there—including all inmates and detainees—to 1,177 as of June 9, 2020. (Doc. 10-1, Joseph Dunn Declaration ¶ 7.)[2] Prior to being admitted, detainees are screened for possible COVID-19 symptoms and possible COVID-19 exposure. (*Id.* ¶¶ 11–12.) Those with suspected cases of COVID-19 are isolated from the general population in the prison and tested for the disease, while those with confirmed cases are isolated and treated for the disease. (*Id.* ¶ 12.) Individuals who have had known exposure to COVID-19 but who have not displayed any symptoms of the

---

[2] Serrano-Ramirez does not dispute any of the facts stated in the Dunn declaration. (*See generally* Doc. 13.)

disease are placed in cohorts with other individuals who have had known exposure, and the movement of those cohorts among the general population is restricted.  (*Id.* ¶ 13.)

In addition to screening detainees, YCP is also screening all staff members and vendors prior to entry.  (*Id.* ¶ 16.)  Those screening procedures include body temperature checks.  (*Id.*)  YCP has also limited professional visits to non-contact visits and has suspended all social visits and tours of the facility.  (*Id.* ¶ 18.)

In terms of hygiene and cleaning measures, YCP provides one bar of soap to each detainee housed in the facility.  (*Id.* ¶ 15.)  For security reasons, a detainee is not permitted to have more than one bar of soap at a time and alcohol-based hand sanitizers are only made available to staff members, but a detainee's bar of soap is replaced as soon as it has been exhausted.  (*Id.*)  Staff members at YCP clean high-traffic and contact areas frequently throughout the day.  (*Id.*)  YCP is also providing education to its staff and detainees on the importance of handwashing and other personal hygiene measures to prevent the spread of COVID-19.  (*Id.*)

Finally, YCP has provided two N95 surgical masks to every staff member and detainee in the facility.  (*Id.* ¶ 23.)  Detainees are required to wear the masks any time they are outside of their cells and are required to wear them at all times while in dormitory-style housing areas, though they are not required to wear them

while sleeping.  (*Id.*)  Detainees are permitted to remove their masks to eat, drink, or shower.  (*Id.*)  The masks are laundered once per week.  (*Id.*)

As of this writing, there are no known current cases of COVID-19 inside YCP, and the facility has had only one confirmed case of COVID-19 to date.  (*Id.* ¶ 22.)  That individual tested positive on April 3, 2020, and has since been released from ICE custody.  (*Id.*)  There are no known instances of that individual infecting any other detainees in the facility.  (*Id.*)

In his petition, Serrano-Ramirez alleges that he is at increased risk of contracting coronavirus because he has numerous health problems, most notably a history of ear infections.  (Doc. 1 ¶¶ 51–52.)  Serrano-Ramirez alleges that he experienced symptoms that could have been consistent with coronavirus for a period of approximately two weeks in April 2020 and that the prison's response was to check his temperature and tell him he was fine.  (*See id.* ¶¶ 54–68.)

### STANDARD OF REVIEW

A United States district court may issue a writ of habeas corpus when an immigration detainee "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

DISCUSSION

## A. The Conditions of Serrano-Ramirez's Confinement Do Not Violate the Constitution

The court will first analyze Serrano-Ramirez's conditions of confinement

claim, which alleges a violation of Serrano-Ramirez's Fifth Amendment right to

substantive due process.  A civil immigration detainee "is entitled to the 'same due

process protections' as a pretrial detainee" under the Fifth Amendment.  *Camacho*

*Lopez*, 2020 WL 1689874, at *6 (quoting *E.D. v. Sharkey*, 928 F.3d 299, 306–07

(3d Cir. 2019)).  The court's inquiry under the Due Process Clause is to determine

whether the conditions of Serrano-Ramirez's confinement "amount to

punishment."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  To make this

determination, the court must determine whether the conditions are "reasonably

related to a legitimate governmental objective."  *E.D.*, 928 F.3d at 307.  "In other

words, we must ascertain whether the conditions serve a legitimate purpose and

whether the conditions are rationally related to that legitimate purpose."  *Thakker I*,

2020 WL 1671563, at *7 (citing *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir.

2008)).

A prison's failure to adequately address the risks posed by COVID-19 may

amount to unconstitutional conditions of confinement warranting habeas corpus

relief.  *See id.* at *9–10.  Although there is no set formula for determining when

habeas corpus relief is appropriate based on the risks posed by COVID-19, courts

considering such a claim may consider a non-exhaustive list of factors including

"(1) whether the petitioner has been diagnosed with COVID-19 or is experiencing

symptoms consistent with the disease; (2) whether the petitioner is among the

group of individuals that is at higher risk of contracting COVID-19; (3) whether

the petitioner has been directly exposed to COVID-19; (4) the physical space in

which the petitioner is detained, and how that physical space affects his risk of

contracting COVID-19; (5) the efforts that the prison has made to prevent or

mitigate the harm caused by COVID-19; and (6) any other relevant factors."

*Saillant*, 2020 WL 1891854, at *4.  "It is not enough for a petitioner to allege that

he is detained and presented with a risk of contracting COVID-19 that is common

to all prisoners.  Rather, the petitioner must make an individualized showing that

he is entitled to habeas corpus relief when considering the above factors."  *Id.*

(citing *Verma*, 2020 WL 1814149, at *5–7).  A petitioner's speculation that a

prison will likely have confirmed COVID-19 cases at some future point in time is

not sufficient to support habeas corpus relief.  *Bystron*, 2020 WL 1984123, at *6.

After reviewing the above factors, the court finds that Serrano-Ramirez is

not entitled to habeas corpus relief based on the conditions of his confinement.

Serrano-Ramirez has not been diagnosed with COVID-19, nor does he allege that

he has been directly exposed to COVID-19.  Serrano-Ramirez alleges that he

experienced symptoms that could have been consistent with COVID-19 two

months ago, *see* Doc. 1 ¶¶ 54–68, but those symptoms have since abated, and there is no indication in the record that the symptoms ever led to a diagnosis of COVID-19.  Furthermore, although Serrano-Ramirez alleges that he has a history of ear infections and that he has experienced ear infections during his detention in YCP, he has not cited to any authorities—and the court is aware of none—stating that ear infections place individuals at higher risk of contracting COVID-19.

Although the physical space of a prison likely exacerbates the risk of COVID-19 transmission, *Verma*, 2020 WL 1814149, at *4, the record shows that YCP has taken significant steps to reduce that risk and that their efforts have been largely successful.  (*See* Doc. 10-1.)  As noted above, YCP has, among other measures, significantly reduced the number of people housed in its facility, implemented screening measures for individuals entering the facility, implemented quarantine and isolation measures for those known to have contracted or been exposed to COVID-19, limited entry into the facility, improved hygiene and cleaning practices in the facility, and provided N95 surgical masks to staff members and detainees.  (*See id.*)  These measures appear to have successfully reduced the risk of detainees contracting COVID-19: as of this writing, there are no known current cases of COVID-19 inside YCP, and the only confirmed case of the disease was successfully contained such that no other inmates were infected by that individual.  (*Id.* ¶ 22.)

Serrano-Ramirez acknowledges that YCP has taken some measures to prevent the spread of COVID-19, but argues in his reply brief that those measures do not go far enough because YCP does not conduct regular COVID-19 tests for all staff and detainees in the prison. (Doc. 13 at 13.) Serrano-Ramirez argues that YCP's screening measures are not by themselves sufficient because COVID-19 can spread through asymptomatic and pre-symptomatic transmission. (*Id.*) Although the court acknowledges this argument, the court notes that regular testing of staff and detainees is not included in the CDC's guidelines for prisons. *See generally* CDC Prison Guidelines. Furthermore, the fact that YCP has only had one positive COVID-19 case since the outbreak began attests to the effectiveness of the measures that YCP has taken. Ultimately, the court agrees with the findings of another court in this district: "There is no perfect solution to preventing the spread of COVID-19 in detention facilities, but York County Prison officials have taken reasonable steps to limit the spread throughout its facility." *Verma*, 2020 WL 1814149, at *6.

Other courts in this district have similarly concluded that YCP's preventive measures have been successful in curbing COVID-19 transmission. For example, Chief Judge Jones initially granted a motion for temporary restraining order filed by a group of YCP detainees and ordered the detainees to be released based on a finding that the prison had not taken adequate measures to prevent the disease, *see*

12

*Thakker I* at \*3, but later denied the detainees' motion for preliminary injunction and ordered them to be returned to YCP based on YCP's subsequent preventive measures.  *See Thakker v. Doll*, __ F. Supp. 3d __, No. 1:20-CV-00480, 2020 WL 2025384, at \*5 (M.D. Pa. Apr. 27, 2020) [hereinafter *Thakker II*] (finding that YCP made "drastic changes" that gave the prison the ability "to effectively control transmission from COVID-positive inmates"); *see also Ndir*, 2020 WL 2306761, at \*6–7; *Williams*, 2020 WL 2193448, at \*7; *Engelund*, 2020 WL 1974389, at \*9–10.

Accordingly, because neither Serrano-Ramirez's individual characteristics nor the characteristics of YCP warrant habeas corpus relief based on his risk of exposure to COVID-19, the court will deny the petition to the extent that it is based on the conditions of Serrano-Ramirez's confinement.  The court accordingly turns its attention to Serrano-Ramirez's claim that his detention has become unreasonably prolonged in violation of the Fifth Amendment.

## B. Serrano-Ramirez's Detention Has Not Become Unreasonably Prolonged

It is undisputed in this case that Serrano-Ramirez's detention is governed by 8 U.S.C. § 1225(b), which regulates the detention of arriving aliens—that is, non-citizens seeking entry into the United States.  There is no statutory entitlement to bond hearings under § 1225(b).  *Jennings v. Rodriguez*, 583 U.S. __, 138 S. Ct. 830, 844 (2018).  Instead, statutory release from detention under 8 U.S.C. § 1225 is only allowed by the terms of 8 U.S.C. § 1182(d)(5)(A), which provides that an

alien may be paroled into the United States if the Attorney General determines "on a case-by-case basis" that "urgent humanitarian reasons or significant public benefit" warrant the release. *Id.* Decisions under § 1182 are purely discretionary and the regulations prevent an IJ from "redetermin[ing] conditions of custody" with respect to certain classes of aliens, including "[a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act." 8 C.F.R. § 1003.19(h)(2)(i)(B).

Although there is no statutory right to a bond hearing under § 1225(b), a petitioner may nonetheless be entitled to a bond hearing when his detention becomes unreasonably prolonged because such detention violates the petitioner's constitutional right to procedural due process. *See Arellano-Ayllon v. Lowe*, No. 3:19-CV-01999, 2020 WL 1911503, at *3–4 (M.D. Pa. Apr. 20, 2020); *see also, e.g.*, *Rades-Suarez v. Doll*, No. 1:19-CV-01946, 2020 WL 362696, at *3–4 (M.D. Pa. Jan. 22, 2020); *Pulatov v. Lowe*, No. 1:18-CV-00934, 2019 WL 2643076, at *3 (M.D. Pa. June 27, 2019); *Destine v. Doll*, No. 3:17-CV-01340, 2018 WL 3584695, at *5 (M.D. Pa. July 26, 2018); *Fatule-Roque v. Lowe*, No. 3:17-CV-01981, 2018 WL 3584696, at *6 (M.D. Pa. July 26, 2018).

This court previously considered the constitutionality of Serrano-Ramirez's continued detention without a bond hearing in *Serrano-Ramirez I*. *See* 2020 WL 2735358, at *1–3. In that case, the court concluded that Serrano-Ramirez's

detention, which at that point had continued for "slightly over one year," had not become so unreasonably prolonged as to be considered unconstitutional. *Id.* at *3.

Serrano-Ramirez filed the petition that initiated the present case only nine days after this court denied his petition in *Serrano-Ramirez I.* (Doc. 1.) At the time of this writing, it has been a mere three weeks since the court denied relief in *Serrano-Ramirez I* on the basis that Serrano-Ramirez's detention had not become unreasonably prolonged. The court is not persuaded that Serrano-Ramirez's reasonable detention became unreasonable during that three-week period.

Serrano-Ramirez argues in his reply brief that his detention has become unreasonably prolonged despite the short amount of time since his previous petition was denied because the circumstances of his detention have changed. (Doc. 13 at 11.) Specifically, Serrano-Ramirez notes that his deferral of removal request was denied a week after his previous petition was denied and that he was ordered removed to Colombia. (*Id.*) Because Serrano-Ramirez is appealing that decision, he argues that his detention will now continue for an "unforeseeable duration." (*Id.*)

Although it may be true that the ultimate length of Serrano-Ramirez's detention is unforeseeable, that question is not before the court. The court's sole determination at this stage is whether Serrano-Ramirez's detention has become unreasonable at the present moment. *See, e.g.*, *Arellano-Ayllon*, 2020 WL

1911503, at *3–4 (basing analysis on duration of petitioner's detention at the time of the court's decision, and not on a prediction of the length of time the detention would ultimately last).  As noted above, the court denied Serrano-Ramirez's petition in *Serrano-Ramirez I* on May 26, 2020, and the court does not find that the three-week interval since that denial has made his detention constitutionally unreasonable.  Accordingly, the court will deny Serrano-Ramirez's petition to the extent that it argues that his detention has become unreasonably prolonged.

## CONCLUSION

For the foregoing reasons, Serrano-Ramirez's petition for writ of habeas corpus is denied without prejudice and his motion for a temporary restraining order is denied as moot.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: June 17, 2020